**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jennifer L. Santiago, | ) | |
| | ) | |
| Plaintiff, | ) | No. CIV 06-3052 PHX RCB |
| | ) | |
| vs. | ) | O R D E R |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| Defendant. | ) | |
| | ) | |

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, plaintiff Jennifer L. Santiago commenced the present action seeking judicial review of a final decision of defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income Benefits ("SSSI"), under Titles II and XVI of the Social Security Act. Currently pending before the court is plaintiff's motion for summary judgment (doc. 16) wherein she argues that the Commissioner's decision "cannot be sustained as it is based on legal error." Memo. (doc. 18) at 19:24. Plaintiff

therefore is seeking summary judgment in her favor and a remand for
an "immediate award of benefits." Id. at 19:26 (citation omitted).
"At a minimum," plaintiff seeks a "remand[] for further
proceedings." Reply (doc. 33) at 19:28. Conversely, the
Commissioner asserts that his final decision "is supported by
substantial evidence, making it conclusive upon this court[,]" and
entitling him to summary judgment as a matter of law. Cross-Mot.
(doc. 24) at 1, ¶ 2:26.

Finding this matter suitable for decision without oral
argument, the court rules as follows. See LRCiv 7.2(f).

### *Background*

Plaintiff protectively filed DIB and SSSI alleging disability
beginning January 1, 2003. Administrative Record ("Admin. R.") at
24. Those applications were denied initially and upon
reconsideration. Id. Following plaintiff's timely request for
rehearing, this matter was heard before an Administrative Law Judge
("ALJ"). Id. Plaintiff, represented by counsel, testified at the
hearing, as well as a vocational expert under contract with the
Office of Hearings and Appeals. Id. The Administrative record in
this case consists of, *inter alia*, a fairly sparse hearing
transcript and medical records from a number of sources.

Ultimately the ALJ issued a decision finding that plaintiff is
not disabled within the Social Security Act and its accompanying
regulations; and thus she is not entitled to benefits. Id. at 31.
The Social Security Administration Appeals Council denied
plaintiff's request for a review of the ALJ's decision. Id. at 9-
12. At that point, the ALJ's decision became the final decision of
the Commissioner, which in turn, allowed plaintiff to seek judicial

1 review in this court as she has done.  <u>See</u> 20 C.F.R. § 404.981.

2 ***Discussion***

3 ***I. Standard of Review***

4     Assuming familiarity with the well-established standards

5 governing summary judgment motions, the court sees no need to

6 repeat the same herein.[1]  Instead, the court will focus on the

7 standards governing judicial review of a Commissioner's decision

8 pursuant to 42 U.S.C. § 405(g).  The court "may set aside the

9 Commissioner's denial of benefits when the ALJ's findings are based

10 on legal error *or* are not supported by substantial evidence in the

11 record as a whole."  <u>Vasquez v. Astrue</u>, 572 F.3d 586, 591 (9th Cir.

12 2009) (internal quotation marks and citation omitted).  Factual

13 determinations by the Commissioner, acting through an ALJ, must be

14 affirmed if supported by substantial evidence.  <u>See</u> <u>Celaya v.</u>

15 <u>Halter</u>, 332 F.3d 1177, 1180 (9th Cir. 2003).

16     "'In determining whether the Commissioner's findings are

17 supported by substantial evidence, [this Court] must review the

18 administrative record as a whole, weighing both the evidence that

19 supports and the evidence that detracts from the Commissioner's

20 conclusion.'" <u>Andrews v. Astrue</u>, 2009 WL 2985449, at *3 (C.D.Cal.

21 Sept. 14, 2009) (quoting <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th

22 Cir. 1998)) (other citation omitted).  "Substantial evidence means

23 more than a mere scintilla but less than a preponderance; it is

24

25     [1]    A trilogy of cases in 1986, <u>Matsushita Elec. Co. v. Zenith Radio Corp.</u>,
   475 U.S. 574, 577, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), <u>Anderson v. Liberty</u>
26 <u>Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and
   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-325, 106 S.Ct. 2548, 91 L.Ed.2d 265
27 (1986), ushered in a new era of summary judgment motions for the federal courts.
   <u>See</u> <u>Rand v. Rowland</u>, 154 F.3d 952, 956-57 (9th Cir. 1998) ("It took nearly fifty
28 years for the Supreme Court to pave the way toward mainstream acceptance of the
   summary judgment procedure with its trilogy of summary judgment cases in the
   mid-1980s.")

                                    - 3 -

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Vasquez</u>, 572 F.3d at 591 (internal quotation marks and citation omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Vasquez</u>, 572 F.3d at 591 (internal quotation marks and citation omitted). "Where the evidence can reasonably support either affirming or reversing the [Commissioner's] decision, [this court] may not substitute [its] judgment for that of the Commissioner." <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007) (citation omitted). "In other words, "where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." <u>Vasquez</u>, 572 F.3d at 591 (internal quotation marks and citation omitted).

Given this "highly deferential standard of review[,]" <u>Valentine v. Comm'r, Soc. Sec. Admin.</u>, 574 F.3d 685, 690 (9th Cir. 2009), it stands to reason that "[a] decision of the ALJ will not be reversed for errors that are harmless." <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Thus, errors that are inconsequential to the ALJ's ultimate determination as to disability are not reversible. <u>Id.</u> at 1055. This court's review is, in short, fairly limited, although it "must consider the evidence that supports as well as detracts from the [ALJ's] conclusion." <u>Werle v. Astrue</u>, 633 F.Supp.2d 857, 879 (D.Ariz. 2009) (citing <u>Day v. Weinberger</u>, 522 F.2d 1154, 1156 (9th Cir. 1975)). At the same time, however, the court is keenly aware that "when applying the substantial evidence standard, [it] should not mechanically accept the Commissioner's findings but should review

the record critically and thoroughly." Id. (citing Day, 522 F.2d at 1156). The court is equally aware of its obligation to "consider the entire record as a whole and . . . not [to] affirm simply by isolating a 'specific quantum of supporting evidence.' " Olguin v. Astrue, 2009 WL 4641728, at *1 (C.D.Cal. Dec. 2, 2009)(quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006)) (other citations omitted).

## II. Disability Determination Framework

"To medically qualify for benefits under the Social Security Act, a claimant must establish 'the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Stout, 454 F.3d at 1052 (quoting 42 U.S.C. § 423(d)(1)(A)). There is a five step sequential evaluation process which the Commissioner, through an ALJ, must employ for determining whether a claimant is disabled. See id. (citing 20 C.F.R. §§ 404.1520, 416.920).

The first step requires the ALJ to determine whether the claimant is currently engaged in "substantial gainful [work] activity." 20 C.F.R. § 404.1520(a)(4)(i). A negative response requires the ALJ to proceed to step two. See Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996) (citation omitted) ("In conducting this [five-step] inquiry, the Commissioner asks five questions in order until a question is answered in such away [sic] that the claimant is conclusively determined disabled or not.") At step two, the focus is on "whether the claimant has a medically severe impairment or combination of impairments that significantly limits

h[er] ability to do basic work activities." <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005) (citations omitted). This severity determination is analyzed in terms of what is "not severe." <u>Smolen</u>, 80 F.3d at 1290. If a claimant satisfies this step two burden of establishing severity, the ALJ proceeds to step three, where medical severity is also a consideration. 20 C.F.R. § 416.920(a)(4)(iii).

At step three, the ALJ determines if the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If the claimant satisfies this criteria, she will be found to be disabled. <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1034 (9th Cir. 2003). If a claimant's condition does not meet or exceed the Listing requirements, the analysis proceeds to step four. <u>See</u> <u>id.</u>

The inquiry at step four turns to the claimant's residual functional capacity ("RFC") which is, essentially, "a summary of what the claimant is capable of doing[,]" <u>Valentine</u>, 574 F.3d at 689, as well as the claimant's "past relevant work." 20 C.F.R. § 416.920(a)(4)(iv). "In assessing an individual's RFC, the ALJ must consider . . . her symptoms (including pain), signs and laboratory findings, together with other evidence." <u>Combs v. Astrue</u>, 2009 WL 839046, at *6 (N.D.Cal. March 30, 2009) (citing 20 C.F.R. § 404, Subpt. P, App. 2 § 200.00(c)). If, at step four, the ALJ determines that the claimant "can still do [her] past relevant work," despite the limitations caused by her impairments, the Commissioner will find that she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

On the other hand, if the claimant does not have "sufficient [RFC] despite the impairment or various limitations to perform her past work[,]" the ALJ will proceed to the fifth and last step in this evaluation process. See Andrews, 2009 WL 2985449, at *4. The claimant has the burden of proof at steps one through four, but at step five "the burden of proof shifts to the [Commissioner] . . . to show that the claimant can do other kinds of work." Valentine, 574 F.3d at 689 (internal quotation marks and citation omitted). A claimant's RFC also factors into this inquiry. The Commissioner will "assess[]" a claimant's RFC and her "age, education and work experience to see if [the claimant] can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v). At step five, a finding that such an adjustment can be made will result in a finding of no disability, whereas a finding that claimant cannot make an adjustment to other work will result in a finding that the claimant is disabled. See id.

### III. Overview of ALJ's Sequential Evaluation Findings

Engaging in that five-step process here, at step one the ALJ found that plaintiff "has not engaged in any substantial gainful activity since January 1, 2003." Admin. R. at 25. This is not in dispute. Proceeding to step two, the ALJ found that the medical evidence showed that plaintiff had the following: "fibromyalgia,[2]

---

[2] Fibromyalgia is, as the Ninth Circuit has explained:

[a] rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. . . . Common symptoms, . . . , include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. . . . Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The

irritable bowel syndrome [("IBS")], a bipolar disorder, a post

traumatic stress disorder, an anxiety disorder with panic attacks,

and an obsessive-compulsive disorder[.]" <u>Id.</u> at 26 (citations

omitted) (footnote added). "[W]hen considered in combination[,]"

the ALJ also found the foregoing to be "'severe' impairments[.]"

<u>See id.</u> The ALJ next found, at step three, that plaintiff did not

have an "impairment, or combination of impairments, that meets or

equals in severity the appropriate medical criteria of any

impairment" in the Listing. <u>Id.</u> at 26. Implicit in that finding

is that plaintiff was not disabled because her impairments did not

satisfy the Listing criteria. Consequently, the ALJ proceeded to

step four.

 At step four, based upon what the ALJ found to be plaintiff's

RFC, discussed below, and her past relevant work, the ALJ found

that she was "unable to perform any of her past relevant work[.]"

<u>Id.</u> at 31 (citations omitted). Proceeding to step five, because

the ALJ found that plaintiff retained the RFC to perform several

types of jobs involving "unskilled, light work[,]" he concluded

that she "has not been under a disability[.]" <u>Id.</u> Hence, plaintiff

was not entitled to DIB or SSSI benefits. <u>Id.</u>

 "Like most Social Security cases, this case involves [alleged

errors in that] five-step procedure[.]" <u>See</u> <u>Valentine</u>, 574 F.3d at

<hr>

American College of Rheumatology issued a set of agreed-upon
diagnostic criteria in 1990, but to date there are no laboratory
tests to confirm the diagnosis.

<u>Benecke v. Barnhart</u>, 379 F.3d 587, 589 (9th Cir. 2004) (citations omitted).
Further, "[f]ibromyalgia is a physical disease, . . . , which is diagnosed based
on widespread pain with tenderness in at least eleven of eighteen sites known as
trigger points." <u>Hanson v. Astrue</u>, 2009 WL 349138, at * 1 n.4 (C.D.Cal. Feb. 11,
2009) (citations and internal quotation marks omitted).

688 (citations omitted).  Plaintiff Santiago is challenging the
scope of the ALJ's severity determination at step two.  Further,
for a host of reasons more fully discussed herein, plaintiff argues
that "legal error occurred at step five of the sequential
evaluation process" as well.  Memo. (doc. 18) at 4:17-18.   The
court will address these challenges seriatim.

### IV.  Step Two -Severity

The ALJ found at step two, as mentioned earlier, that
plaintiff Santiago had a number of impairments which "in
combination" were "'severe' . . . within the meaning of the Act and
Regulations[.]" AR at 26.   The ALJ thus properly and necessarily
moved to step three of the sequential disability analysis.
Nevertheless, plaintiff claims that the ALJ erred at step two by
finding that her "diagnosis of degenerative disc disease with
scoliosis[,]" which he broadly described as "claimant's back
disorder[,]" was "non-severe[.]" See Admin. R. at 26 and 28.

Plaintiff overlooks the fact, however, that because she
received a favorable determination at step two, the ALJ continued
with the sequential disability analysis.  "Thus, any error in
failing to consider certain impairments severe[,]" such as
degenerative disc disease with scoliosis, "did not prejudice
[plaintiff's] claim at this level."  See Wright v. Astrue, 2009 WL
2827567, at *6 (D.Or. Aug. 24, 2009) (citing, Burch v. Barnhart,
400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting an
impairment from the severe impairments identified at step two was
harmless where that step was resolved favorably to claimant)).
Consequently, the court will turn to the bulk of plaintiff's
arguments, directed to the ALJ's ultimate step five finding – she

1 was not under a disability.

2 **_V.   Step Five_**

3      "To direct th[e] inquiry [at step five], the . . . ALJ[] must

4 determine the claimant's residual functional capacity, a summary of

5 what the claimant is capable of doing (for example, how much weight

6 he can lift)." <u>Valentine</u>, 574 F.3d at 689 (citation and internal

7 quotation marks omitted); <u>see</u> <u>also</u> <u>Moreno v. Astrue</u>, 2009 WL

8 2711900, at *5 (C.D.Cal. Aug. 26, 2009) (citations omitted) ("A

9 claimant's . . . RFC . . . is what he can still do despite his

10 physical, mental, nonexertional, and other limitations.")  The ALJ

11 may, as he did here, "pose to a vocational expert a hypothetical

12 incorporating the . . . RFC; the expert then opines on what kind of

13 work someone with the limitations of the claimant could

14 hypothetically do."  <u>Id.</u> (citation omitted).  "The ALJ must then

15 determine whether, given the claimant's RFC, age, education, and

16 work experience, [s]he actually can find some work in the national

17 economy."  <u>Id.</u> (citations omitted).  In contrast to steps one

18 through four, at step five "the burden of proof shifts to the

19 [Commissioner] at step five to show that the claimant can do other

20 kinds of work."  <u>Id.</u> (citation and internal quotation marks

21 omitted).

22      Here, the ALJ found that plaintiff had the RFC to "perform

23 unskilled, light work[3] with no crawling, crouching, climbing,

24

25      [3]     Under Social Security regulations, "[l]ight work involves lifting no
more than 20 pounds at a time with frequent lifting or carrying of objects weighing
26 up to 10 pounds.  Even though the weight lifted may be very little, a job is in
this category when it requires a good deal of walking or standing, or when it
27 involves sitting most of the time with some pushing and pulling of arm or leg
controls.  To be considered capable of performing a full or wide range of light
28 work, you must have the ability to do substantially all of these activities."  20
C.F.R. § 416.967(b).

squatting, or kneeling." Admin. R. at 31 (footnote added). As part of that RFC, the ALJ further found that plaintiff was "unable to use her lower extremities for pushing or pulling, or her upper extremities for work above the shoulder level." Id. Additionally, the ALJ found that plaintiff "requires a sit/stand option and is limited to work involving simple operations." Id. Given that RFC, plaintiff's age at the time (36 years old) and her "high school equivalency education[,]" the ALJ asked the vocational expert whether "there are jobs that fit that hypothetical . . . in . . . Arizona and in the national economy[.]" Id. at 426. The vocational expert answered in the affirmative. See id. Thus the ALJ found, based upon her RFC and "vocational factors," that there "are a significant number of jobs existing in the national economy that [plaintiff] could perform." Id. at 31. As "identified by the Vocational Expert," those jobs "are the unskilled, light jobs of office helper, gate guard and cashier." Id. Consequently, at the fifth and final step of the sequential evaluation process, the ALJ found that plaintiff was not under a disability. Id.

Plaintiff contends that the RFC determination, and resultant denial of benefits, was error because there is not substantial evidence in the record to support that determination. Plaintiff disputes the ALJ's findings at step five on a number of bases. First, plaintiff asserts that the ALJ did not properly consider the findings and opinions of her primary treating physician, Chester Christianson, D.O., a family practitioner. Second, plaintiff disputes the ALJ's adverse credibility finding as to her subjective pain and fatigue. Third, plaintiff challenges two aspects of her RFC, which is an integral part of the disability determination at

- 11 -

step five.  In particular,  plaintiff contends that the ALJ erred

in not including a function-by-function assessment of "the effect

of [her] physical restrictions[,]" and by not "adequately

address[ing] [her] psychological restrictions."  Memo. (doc. 18) at

15.

Next, plaintiff claims that the hypothetical question which

the ALJ posed to the vocational expert was "incomplete and

inaccurate" because it omitted "the effects of [her] pain" and her

"psychiatric restrictions and limitations."  Id. at 15-16.  Given

those claimed deficiencies, plaintiff argues that the ALJ

improperly relied upon the vocational expert's response to the

ALJ's hypothetical.  Plaintiff asserts that "additional error"

occurred when the ALJ "failed to identify and resolve conflicts

between [the] vocational consultant['s] testimony and the DOT

[Dictionary of Occupational Titles]."  Id.  Finally, plaintiff

contends that "there is no reliable evidence to support the [ALJ's]

conclusion[]" that "there are a significant number of 'other' jobs

that [plaintiff] can perform[.]" Id. at 17.  The court will address

plaintiff's contentions in turn.

### A.  Treating Physician

#### 1.  Governing Legal Standards

An "ALJ must consider all medical opinion evidence."

Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20

C.F.R. § 404.1527(b)).  In the seminal case of Lester v. Chater, 81

F.3d 821 (9th Cir. 1995), the Ninth Circuit articulated a hierarchy

of medical opinions.  "Generally, the opinions of examining

physicians are afforded more weight than those of non-examining

physicians, and the opinions of examining non-treating physicians

are afforded less weight than those of treating physicians." Orn
v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citations omitted).
Succinctly put, opinions of treating physicians are favored over
those of non-treating physicians." Id. (citing 20 C.F.R.
§ 404.1527). This deference to treating physicians' opinions is
understandable in that they are "'employed to cure and ha[ve] a
greater opportunity to know and observe the patient as an
individual[.]'" O'Neil v. Astrue, 2009 WL 1444437, at *10 (D.Or.
May 21, 2009) (quoting Sprague v. Brown, 812 F.2d 1226, 1230 (9th
Cir. 1987)).

There are limits to this deference though. "[A] treating
physician's opinion is not conclusive as to whether or not a
claimant meets the statutory definition of disability, because that
is a legal conclusion reserved to the Commissioner." Id. (citing,
inter alia, 20 C.F.R. § 404.1527(e)). However, "[a]lthough [an]
ALJ is not bound by an expert medical opinion on the ultimate
question of disability, []he must provide specific and legitimate
reasons for rejecting the opinion of a treating physician."
Tommasetti, 533 F.3d at 1041 (citations and internal quotation
marks omitted).

"In Orn, the Ninth Circuit reiterated and expounded upon its
position regarding the ALJ's acceptance of the opinion of an
examining physician over that of a treating physician." Murrieta
v. Astrue, 2009 WL 2184550, at *7 (E.D.Cal. July 21, 2009). "If a
treating physician's opinion is well-supported by medically
acceptable clinical and laboratory diagnostic techniques and is not
inconsistent with the other substantial evidence in [the] case
record, [it will be given] controlling weight." Orn, 495 F.3d at

- 13 -

631 (citations omitted).  Significantly, however, when an ALJ finds that a treating physician's opinion is not entitled to controlling weight, that does not mean "'that the opinion should be rejected.'" Id. at 632 quoting S.S.R. 96-2p at 4 (Cum. Ed. 1996), *available at* 61 Fed.Reg. 34,490, 34,491 (July 2, 1996)).  Indeed, according to the Social Security Administration, "'[i]n many cases, a treating source's medical opinion will be *entitled to the greatest weight and should be adopted*, *even if* it does not meet the test for controlling weight.'"  Id. (quoting S.S.R. 96-2p at 4 (Cum. Ed.1996), *available at* 61 Fed.Reg. 34,490, 34,491 (July 2, 1996)) (emphasis added).

Consistent with the foregoing, even when a treating physician's opinion is not entitled to controlling weight, such "'opinions are still entitled to deference and *must be weighed* using all of the factors provided in 20 C.F.R. 404.1527[.]'" Id. at 632 (quoting S.S.R. 96-2p at 4 (Cum. Ed.1996), *available at* 61 Fed.Reg. 34,490, 34,491 (July 2, 1996)) (emphasis added).  "Those factors include the [l]ength of the treatment relationship and the frequency of examination by the treating physician; and the nature and extent of the treatment relationship between the patient and the treating physician."  Id. at 631 (citations and internal quotation marks omitted).  "Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and [o]ther factors such as the degree of understanding a physician has of the

Administration's disability programs and their evidentiary requirements and the degree of his or her familiarity with other information in the case record." Id. (citations and internal quotation marks omitted).

Additionally, if a treating physician's opinion "is not contradicted by another doctor," the ALJ may "reject[]" the former's opinion "only for clear and convincing reasons supported by substantial evidence in the record." Id. at 632 (citations omitted). However, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record." Id. (citations and internal quotation marks omitted). An ALJ satisfies that standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. (citation omitted). It is not enough for the ALJ to simply "offer his conclusion." Id. The ALJ "must do more[;] . . . [he] must. . . explain why [his own interpretations], rather than the doctors', are correct." Id. (citations and internal quotation marks omitted). As just shown, in the Ninth Circuit an ALJ must adhere to strict standards to justify rejecting a treating physician's opinion.

### 2. ALJ's Findings

Application of those principles to the ALJ's decision herein is difficult for several reasons. First, the ALJ's characterization of the medical evidence was very general and he provided only minimal cites to the relatively voluminous record. Second, it is not readily apparent the weight which the ALJ

accorded the opinions of plaintiff's primary treating physician,
Dr. Christianson. For that matter, it also is not clear from the
ALJ's decision the weight which he accorded to the opinions of the
other physicians, such as Dr. Cunningham. Dr. Cunningham evaluated
plaintiff one time at the behest of the Arizona Department of
Economic Security. Dr. Cunningham's opinion, therefore, should
have been "given less weight than the physicians who treated her."
See Benecke, 379 F.3d at 592 (citation and footnote omitted).
Moreover, the ALJ explained that "Dr. Cunningham indicated th[at]
[plaintiff's] subjective complaints far outweighed the objective
findings." Admin. R. At 26. However, "'in light of the unique
evidentiary difficulties associated with the diagnosis and
treatment of fibromyalgia, opinions[,]'" such as Dr. Cunningham's,
"'that focus solely upon objective evidence are not particularly
relevant.'" Ostalaza v. Astrue, 2009 WL 3170089, at *5 (C.D.Cal.
Sept. 30, 2009) (quoting Rogers v. Commissioner of Social Security,
486 F.3d 234, 248 (6th Cir. 2007)).

Further muddying the waters is the ALJ's failure to expressly
find that Dr. Christianson's opinions contradicted those of any of
the other physicians. These omissions made this reviewing court's
task unnecessarily arduous. Nonetheless, careful consideration of
the entire record, the ALJ's decision, and the applicable law shows
that the ALJ did not properly weigh and consider Dr. Christianson's
opinions.

Over the course of approximately two years, from at least late
November 2003 through some time in November 2005, Dr. Christianson
treated plaintiff. Admin. R. at 260-305; and at 332-335. During
that time he referred plaintiff to Dr. Mallace, a rheumatologist,

and to Dr. Doust, a pain management specialist.  Admin. R. at 256;
and 368.  As the ALJ recognized, Dr. Christianson "opined that due
to her fibromyalgia, [plaintiff] was unable to sit or stand for any
prolonged time, and she was physically disabled from employment at
that time[.]" Id. at 27 (citing [Admin. R. at 272]).  Dr.
Christianson likewise opined that plaintiff was "unable to do
physical labor[.]"  Id. at 272.  Further, as the ALJ construed Dr.
Christianson's "two medical source statements[,]" the doctor also
opined that plaintiff "is capable of less than sedentary work
activity[.]" Id. (citations omitted).  The ALJ did not describe the
contents of those two statements, although, as will be seen,
without explanation the ALJ appears to have agreed with Dr.
Christianson as to many but not all of the physical "limitations
and restrictions"[4] set forth therein.

The ALJ's decision includes an overview of the findings of
Drs. Cunningham, Doust and Mallace.  The ALJ noted that following
his one-time examination of plaintiff, Dr. Cunningham diagnosed
plaintiff with "chronic pain syndrome with limited range of motion
of the cervical spine and a history of post traumatic stress
disorder.  Id. at 26.  Further, Dr. Cunningham's "[e]xamination
revealed a normal gait and coordination, and normal range of motion
in the dorsolumbar spine, shoulders, elbows, wrists, fingers,
thumbs, hips, knees, and ankles."  Id.  Dr. Cunningham also noted
that "[t]rigger points revealed" that plaintiff had "atypical
tender areas behind bilateral knees, the bottom of the feet and

_____

    [4]    The Medical Source Statement form speaks in terms of both restrictions
and limitations.  For brevity's sake, hereinafter the court will refer simply to
limitations.

some tenderness at the base of the neck." Id.  As the ALJ
stressed, Dr. Cunningham wrote that plaintiff's "subjective
complaints far outweighed the objective findings." Id. at 183; see
also id. at 26.  The ALJ summarized the contents of Dr.
Cunningham's Medical Source Statement as "opin[ing]" that plaintiff
"can lift and/or carry 50 pounds occasionally and 25 pounds
frequently, and has no limitations in standing, walking or sitting.
[Dr. Cunningham] reported the [plaintiff] can occasionally crawl,
and frequently kneel and crouch." Id. at 26- 27 (citing [Admin. R.
At 184-186]).

Turning to a January 20, 2005, examination by rheumatologist
Dr. Mallace, the ALJ noted that that doctor found plaintiff's
"extremities were normal by inspection, range of motion, muscle
tone strength, and alignment." Id. at 27; see also id. at 257.
Dr. Mallace further noted that plaintiff "had good motion of the
cervical and lumbar spine without paravertebral spasm." Id.; see
also at 257.  Dr. Mallace did find "trigger point tenderness" on
that date, but that plaintiff "had normal coordination, sensation
and reflexes[.]" Id. at 27 (citing [Admin. R. at 256-258]).  The
ALJ then noted Dr. Mallace's assessment several months later, on
May 23, 2005, of "persistent fibromyalgia[.]" Id. (citing Admin.
R. at 245).  On July 28, 2005, at her fourth and last visit with
Dr. Mallace, he adhered to his diagnosis of fibromyalgia, again
noting that plaintiff's "extremities move[d] well," but that she
had "chronic trigger point tenderness of fibromyalgia." Id. at
243; see also at 27.

Finally, the ALJ reviewed the medical records from four office
visits which plaintiff made to a pain management specialist, Dr.

Doust, between late 2005 and early 2006. Dr. Doust's first examination of plaintiff revealed, as the ALJ stated, "normal joint, bones and muscles of the bilateral upper and lower extremities, full and symmetrical muscle strength, tone and size throughout, intact sensory testing, normal and symmetrical deep tendon reflexes, normal gait and station, and normal spine without muscle spasm." Id. at 27; see also id. at 367-368. Based upon that exam, Dr. Doust diagnosed plaintiff with "fibromyositis/myofascial pain and neuralgia, neuritis and radiculitis." Id. (citing [Admin. R. at 366-369]). Plaintiff's next appointment with Dr. Doust, a few weeks later, showed that she "was within normal limits with the exception of tenderness over most fibromyalgia trigger points." Id. at 27-28 (citing [Admin. R. at 339-342]).

The only noteworthy aspect of plaintiff's next visit to Dr. Doust, according to the ALJ, is that she "reported moderate stability of her pain symptomatology[.]" Id. at 28 (citing [Admin. R. at 372]). The ALJ accurately observed that on plaintiff's last visit to Dr. Doust she "indicated increased pain with radiation to the left leg and foot[,]" but "examination was benign." Id. Hence, Dr. Doust "recommend[ed]" id. at 374, that plaintiff have "electrodiagnostic testing of the left lower extremity[.]" Id. at 28 citing [Admin. R. at 373-375]). The ALJ concluded his review of Dr. Doust's records commenting that if that testing is completed, it "is not part of the evidentiary record." Id.

### 3. Analysis

As mentioned, the well-accepted "controlling weight" standard "first require[s]" the ALJ "to determine whether or not the opinion

- 19 -

of the treating physician will be given controlling weight, which
in turn requires consideration of whether or not the treating
physician's opinion is well-supported by medically acceptable
clinical and laboratory diagnostic technique and is not
inconsistent with the other substantial evidence in the case
record." Cota v. Commissioner of Social Security, 2009 WL 900315,
at *8 (E.D.Cal. March 31, 2009). Here, the ALJ purported to engage
in that first level of inquiry when he declined to "accord
substantial persuasive weight to the opinions of Dr. Christianson
since they are not supported by his own treatment records, or the
medical record as a whole discussed" in the ALJ's decision. Admin.
R. at 27. Even equating "substantial persuasive weight" with
"controlling weight," there are several flaws with the ALJ's
analysis of the record medical evidence.

First, according to the ALJ he did not give controlling weight
to the opinion of plaintiff's treating physician because that
doctor's "own treatment records . . . contain[ed] little in the way
of objective findings[]" regarding his "diagnoses of
fibromyalgia[.]"[5] Id. The ALJ stressed that one of Dr.
Christianson's exams of plaintiff "revealed normal cervical,
thoracic and lumbar spine, normal hips and knees, no arthritis or
degenerative joint disease, normal range of motion and no motor
sensory cerebellum abnormalities." Id. at 27. Disregarding record
evidence of trigger point tenderness by plaintiff's treating

_____

[5]     The court is well aware that the ALJ made that same finding as to the
treating physician's other diagnoses of "degenerative disc disease with scoliosis,
cervical and lumbar strain, and back pain[.]" Admin. R. at 27. However, because
the ALJ did not find those other diagnoses to be "severe impairments," at this
juncture his finding as to the lack of objective findings could only have been
directed to the fact that Dr. Christian diagnosed plaintiff with fibromyalgia.

rheumatologist and pain management specialist, the ALJ relied upon
the fact that Dr. Christianson's April 16, 2005 handwritten
notation does not mention "trigger point tenderness[.]"[6] <u>Id.</u>
(citation omitted) (footnote added).  Generally citing to 50 pages
of Dr. Christianson's records, the ALJ found that "the objective
physical findings substantiating [plaintiff's] subjective
complaints [we]re minimal[.]"  <u>Id.</u>

 There is a near consensus of medical opinion as to plaintiff's
diagnosis of fibromyalgia.  Plaintiff's primary treating physician,
as well as her pain management specialist and her rheumatologist,
all diagnosed her with fibromyalgia.  <u>See</u> <u>e.g.</u>, Admin. R. at 243;
272; 303; 368; and 371-372.  The State's non-treating physician,
Dr. Cunningham, more broadly diagnosed plaintiff with "[c]hronic
pain syndrome with limited range of motion of the cervical spine
. . . due to subjective pain."  <u>Id.</u> at 183.  Moreover, fibromyalgia
was among the "impairments" which the ALJ found to be "severe in
combination," and that is not disputed.  <u>See</u> <u>id.</u> at 26.  Thus, the
court is left to conclude that because the ALJ found that Dr.
Christianson's records did not include objective physical findings
of fibromyalgia, the ALJ discounted that doctor's opinions as to
some of plaintiff's physical limitations and her overall inability
to work.  Significantly, however, "courts have found it error for
an ALJ to discount a treating physician's opinion as to resulting
limitations due to a lack of objective evidence for fibromyalgia."
<u>Belmont v. Astrue</u>, 2009 WL 2591347, at *17 (E.D.Cal. Aug. 21, 2009)

---

[6]     As earlier noted, fibromyalgia "is diagnosed based on widespread pain
with tenderness in at least eleven of eighteen sites known as trigger points."
<u>Hanson</u>, 2009 WL 349138, at * 1 n.4 (citations and internal quotation marks
omitted).

(citing cases).

Compounding that error and further hindering this court's review is that, despite the foregoing, the ALJ agreed with Dr. Christianson as to many of plaintiff's limitations. For example, mirroring Dr. Christianson's findings on his Medical Source Statement, the ALJ found that plaintiff should not be required to "crawl[], crouch[], climb[], squat[] or kneel[]." Admin. R. at 29; see also id. at 305. Evidently the ALJ also gave credence to Dr. Christianson's opinion that plaintiff "need[ed] to alternate standing and sitting[]" in that he found that she "requires a sit/stand option[.]" Id. at 304 (emphasis omitted); and at 29. Yet, by finding that plaintiff had an RFC "to perform unskilled light work[,]" the ALJ implicitly rejected other aspects of Dr. Christianson's opinion such as plaintiff's severe fatigue and her limitations in walking, i.e. "[l]ess than 2 hours in an 8 hour day[.]" See id. at 305; and 304. Thus, similar to Belmont, the ALJ did "not explain why he accepted certain portions" of the treating physician's opinion, despite a purported lack of objective findings, while electing to reject others for that same reason. See Belmont, 2009 WL 2591347, at *17. Hence, the ALJ's decision, based upon the purported lack of objective findings in Dr. Christianson's records, to accept part of his opinions, but reject others, is inherently inconsistent. Perhaps those internal inconsistencies could have been explained adequately if the ALJ had provided specific and legitimate reasons supported by substantial record evidence for rejecting Dr. Christianson's opinions. But, as explained below, the ALJ did not do that.

Moreover, because the ALJ did not give controlling weight to

Dr. Christianson's opinions, it was incumbent upon him to weigh those opinions "using *all* of the factors provided in 20 C.F.R. § 404.1527[,]" and set forth earlier. See Orn, 495 F.3d at 632 (citations and internal quotation marks omitted) (emphasis omitted). The ALJ did not do that either. He "did not undertake to examine any factors other than the overall state of the evidence of record[.]" See Cota, 2009 WL 900315. Such a cursory review does not comport with 20 C.F.R. § 404.1527 and the Social Security Rulings and case law construing it. This is yet another error in the ALJ's consideration of the opinions of plaintiff's primary treating physician.

Further, as noted at the outset, the ALJ did not make a discrete determination that Dr. Christianson's opinions contradicted those of the other physicians. The record shows, though, that Drs. Christianson and Cunningham contradicted each other at nearly every step of the way as to plaintiff's physical limitations.[7] Of equal if not more import is that the former,

_____

[7] These contradictions are best shown through a side-by-side comparison of Dr. Cunningham's Medical Source Statement with that of Dr. Christianson. In addition to his general finding that plaintiff was "unable to do physical labor" and that she was "physically disabled for employment[,]" Dr. Christianson found that plaintiff had a number of physical restrictions or limitations. Admin. R. At 272. Dr. Christianson indicated that plaintiff can only "occasionally" lift/carry "less than 10 pounds[,]" but that she "frequently" can lift/carry that same weight. Id. at 303 (emphasis omitted). In contrast, Dr. Cunningham opined that plaintiff could "[o]ccasionally" lift/carry "50 pounds[,]" and that she could "[f]requently" lift/carry "25 pounds[.]" Id. at 184.
Dr. Christianson also indicated that plaintiff had "limitations in standing and/or walking[,]" opining that plaintiff could do so for "[l]ess than 2 hours in an 8 hour day[.]" Id. at 304. Likewise, Dr. Christianson noted that plaintiff could sit for only half an hour in an eight hour day. Id. These opinions are markedly different from those of Dr. Cunningham who found that plaintiff had no limitations whatsoever in standing, walking or sitting. Id. at 184; and 185. Drs. Christianson and Cunningham also gave contradictory opinions as to plaintiff's ability to kneel, crouch and crawl. The former concluded that that plaintiff could "never" kneel; only "occasionally (no more than 2 hrs/day)" crouch; and "never" crawl. Id. at 305. On the other hand, Dr. Cunningham found that plaintiff could "occasionally crawl, and frequently kneel and crouch[.]" Id. at 27; see also id. at 185. Dr. Christianson additionally found that plaintiff had a host of other

1  plaintiff's treating physician and the latter, the State agency's

2  non-treating physician, gave controverting opinions as to

3  plaintiff's disability.  Basically, Dr. Christianson opined that

4  plaintiff is unable to work and Dr. Cunningham disagreed.  Compare

5  Admin. R. at 181-186 with Admin. R. at 272; and 303-307.

6       One example of this contradictory evidence is particularly

7  significant in the context of fibromyalgia.  The last paragraph of

8  the pre-printed Medical Source Statement states: "If your patient

9  suffers from severe fatigue and cannot complete an 8 hour day or 40

10 hour workweek, please comment on what findings you have based this

11 conclusion."  Id. at 305 (emphasis omitted).  Dr. Christianson

12 agreed with that assessment of plaintiff's condition, commenting

13 that he based that conclusion on his findings of "pain & weakness."

14 Id.  By not commenting on that pre-printed Statement, Dr.

15 Cunningham reached the opposite conclusion – plaintiff did not

16 "suffer[] from severe fatigue and [could] complete" a standard

17 workweek.  See id. at 186.

18      Despite those contradictory opinions, the ALJ did not

19 "set[]out a detailed and thorough summary of the facts and

20 conflicting clinical evidence, stating his interpretation thereof,

21 and making findings."  See Orn, 495 F.3d at 632 (citation omitted).

22 Instead, the ALJ merely "offer[ed] his conclusions[,]" which is not

23 sufficient in this Circuit.  See id.  Absent from the ALJ's decision

24 are "his own interpretations and explain[ations] why they, rather

25

26  _____

27  restrictions or limitations regarding other activities, such as climbing, stooping
    and reaching, whereas Dr. Cunningham found just the opposite – plaintiff had no
    limitations.  Compare id. at 185 with id. at 305.  Thus, although the ALJ did not
28  identify any conflicts in the medical evidence, the record is replete with
    contradictions between plaintiff's treating physician and Dr. Cunningham.

- 24 -

than the doctors', are correct." <u>See</u> <u>id.</u> These deficiencies are magnified here because, to reiterate, despite agreeing with plaintiff's primary treating physician that she had numerous physical limitations, the ALJ found that plaintiff was not disabled and had the RFC "to perform unskilled light work[.]" Admin. R. at 29.

The court recognizes "that a determination of a claimant's ultimate disability is reserved to the Commissioner, and that a physician's opinion is not determinative." <u>See</u> <u>Belmont</u>, 2009 WL 2591347, at *18 (citing 20 C.F.R. § 404.1527(e)). At the same time though, "the Ninth Circuit has commented that it does not distinguish between a medical opinion as to physical condition and a medical opinion on the ultimate issue of disability." <u>Id.</u> (citation omitted). Indeed, according to the Social Security Administration:

> '[O]pinions from any medical source on issues reserved to the Commissioner must *never be ignored*. The adjudicator is *required* to *evaluate all evidence* in the case record that may have a bearing on the determination or decision of disability, *including opinions from medical sources about issues reserved to the Commissioner*.'

<u>Id.</u> (quoting SSR 96-5p) (emphasis added). Thus, the fact that Dr. Christianson's opined, as the ALJ reiterated, that plaintiff "was physically disabled from employment[,]" as she had a significant number of physical limitations, <u>see</u> Admin. R. at 27 (citation omitted), did "not relieve the ALJ of the burden of offering specific and legitimate reasons for rejecting the opinion." <u>See</u> <u>id.</u>; <u>see also</u> <u>Detwiler v. Astrue</u>, 2009 WL 4624979, at *4 (C.D.Cal. Dec. 7, 2009) (citing, *inter alia*, <u>Lester</u>, 81 F.3d at 830)) ("If the treating physician's opinion on the issue of disability is

controverted, the ALJ must still provide 'specific and legitimate reasons' supported by substantial evidence in the record in order to reject the treating physician's opinion.") Again, the ALJ did not do that here.

To be sure, the ALJ was not overtly dismissive of plaintiff's fibromyalgia diagnosis and attendant functional limitations. Nonetheless, because the ALJ failed to provide specific, legitimate reasons for his conclusions as to the opinions of plaintiff's primary treating physician. Therefore, "[p]laintiff is entitled to summary judgment on [her] claim that the ALJ failed to properly credit the opinions of [her] treating physician." See Ballard v. Astrue, 2009 WL 3126282, at *8 (E.D.Cal. Sept. 23, 2009).

### B. Adverse Credibility Determination

Next, plaintiff challenges the ALJ's finding that her "allegations" as to "the severity and extent of her pain [were] not entirely credible." Admin. R. at 29. From plaintiff's standpoint, "[t]he ALJ's failure to set forth sufficient reasons for rejecting [her] subjective complaint testimony warrants a remand for an award of benefits." Reply (doc. 35) at 15 (citation omitted). Asserting that the record "is replete with inconsistencies[,]" the Commissioner retorts that the ALJ properly evaluated plaintiff's credibility and the court should not second-guess the ALJ's negative credibility finding. Cross-Mot. Memo. (doc. 27) at 11:1.

"Pain of sufficient severity caused by medically diagnosed 'anatomical, physiological, or psychological abnormalit[y]' may serve as the basis for a finding of disability." Cisneros v. Astrue, 2008 WL 2977459, at *5 (C.D.Cal. 2008) (quoting 42 U.S.C. § 423(d)(5)(A)) (other citation omitted). Indeed, "[i]n

determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, . . . , and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" Robbins, 466 F.3d at 883 (quoting SSR 96-8p, 1996 WL 374184, at *5) (other citations omitted). "Moreover, SSR 96-8p directs that '[c]areful consideration' be given to any evidence about symptoms 'because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.'" Id. (quoting SSR 96-8p, 1996 WL 374184, at *5). That said, "[a]n ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn, 495 F.3d at 635 (citation and internal quotation marks omitted). At the same time though, the court recognizes that "pain is a highly idiosyncratic phenomenon, varying according to the pain threshold and stamina of the individual[.]" Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (citation omitted).

"In evaluating the credibility of a claimant's testimony regarding subjective pain," an ALJ must "engage in a two-step analysis." Vasquez, 572 F.3d at 591 (citation omitted). In the first step, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citation and internal quotation marks omitted). This does not require the claimant "to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (internal

quotation marks and citations omitted).  Consequently, "the ALJ may
not reject subjective symptom testimony . . . simply because there
is no showing that the impairment can reasonably produce the *degree*
of symptom alleged."  <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036
(9th Cir. 2007) (citations and internal quotation marks omitted)
(emphasis added by <u>Lingenfelter</u> Court).

    If the claimant meets this threshold, and there is no evidence
of malingering, at step two "the ALJ can reject the claimant's
testimony about the severity of the symptoms *only* if she gives
specific, clear and convincing reasons for the rejection."  <u>Id.</u>
(citation and internal quotation marks omitted) (emphasis added).
That standard, "the most demanding required in Social Security
cases[,]" <u>Moore v. Comm'r of Social Sec. Admin.</u>, 278 F.3d 920, 924
(9th Cir. 2002), mandates that the ALJ "cit[e] the reasons why the
[claimant's] testimony is unpersuasive."  <u>Orn</u>, 495 F.3d at 635
(citation and internal quotation marks omitted).  "'General
findings are insufficient; rather, the ALJ must identify what
testimony is not credible and what evidence undermines the
claimant's complaints.'" <u>Jimenez v. Astrue</u>, 2009 WL 2589780, at * 3
(C.D.Cal. Aug. 21, 2009) (quoting <u>Reddick</u>, 157 F.3d at 722) (other
citation omitted); <u>see also</u> <u>Smolen</u>, 80 F.3d at 1284 ("The ALJ must
state specifically which symptom testimony is not credible and what
facts in the record lead to that conclusion.")

    To illustrate, the Ninth Circuit in <u>Vasquez</u> held that the ALJ
did not satisfy the clear and convincing standard because she "made
no specific findings in support of her conclusion that Vasquez's
claims were not credible, other than the vague allegation that they
were 'not consistent with the objective medical evidence.'"

- 28 -

<u>Vasquez</u>, 572 F.3d at 592 (footnote omitted).  As <u>Vasquez</u> clearly shows, an ALJ's "credibility determination" must be based upon "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." <u>Tommasetti</u>, 533 F.3d at 1039 (citation and internal quotation marks omitted).

The Ninth Circuit has identified a number of legitimate factors an ALJ can employ in weighing a claimant's credibility as to symptoms.  Those factors "includ[e] (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  <u>Id.</u> (citations and internal quotation marks omitted).  "[T]he ALJ *must* also consider the factors set out in SSR 88-13[,]" which "include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities."  <u>Smolen</u>, 80 F.3d at 1284 (citation and footnote omitted) (emphasis added); <u>see</u> <u>generally</u> SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

Before considering the legal sufficiency of the ALJ's stated reasons for discrediting plaintiff Santiago's pain allegations, the court is compelled to address the ALJ's initial, broader finding.

More particularly, the ALJ found that "the allegations of
[plaintiff], with regard to the severity and extent of her pain,
are *not entirely credible*." Admin. R. at 29 (emphasis added).
This "phrase implies that the ALJ found some of plaintiff's
statements credible or that he found some or all of her statements
credible to some degree." See <u>Stutter v. Astrue</u>, 2009 WL 2824740,
at *5 (E.D.Cal. Sept. 1, 2009) (footnote omitted). Nowhere,
however, did the ALJ "specify any statements [by plaintiff] that he
found to be not credible, either in whole or in part. See <u>id.</u>
The court is thus left to guess exactly what parts of plaintiff's
pain allegations the ALJ credited and what he rejected in order to
determine her RFC. See <u>id.</u> at *5 n. 3. The ALJ's rejection of
plaintiff Santiago's subjective pain allegations is certainly not
specific and clear, as this Circuit requires.

In the present case, the ALJ identified three specific
"facts[,]" discussed below, as justification for partially
discounting plaintiff's pain allegations. Admin. R. at 29. The
ALJ did not, however, discuss plaintiff's subjective complaint
testimony in terms of the Ninth Circuit's two-step analysis
outlined earlier. Nevertheless, the court is able to infer that
step one is met here. That inference arises from "the ALJ's
finding (at step two of the sequential evaluation process) that
Plaintiff suffered from a medically determinable impairment[.]"
See <u>Coleman v. Astrue</u>, 2009 WL 2424676, at * 8 (N.D.Cal. Aug. 7,
2009). That step two finding "leads the Court to infer that the
ALJ concluded that Plaintiff had presented medical evidence that
[s]he suffered an underlying impairment that might cause the kinds
of symptoms about which Plaintiff testified." See <u>id.</u>; see <u>also</u>

Cisneros, 2008 WL 2977459, at *6 (citing Smolen, 80 F.3d at 1282) ("[I]mplicit in the ALJ's acceptance of plaintiff's allegations regarding her symptoms and limitations . . . , is a determination that plaintiff's underlying impairments could reasonably produce some degree of the symptom alleged by plaintiff.")  Indeed, evidently the parties have come to the same conclusion as they agree that the first step in analyzing plaintiff's credibility is satisfied here.  See Cross-Mot. Memo. (doc. 27) at 8-9; Reply (doc. 33) at 9:23-28.

Given that implicit finding, and because he did not cite to any evidence of malingering,[8] the issue becomes whether the ALJ provided "specific, clear and convincing reasons" for his adverse credibility finding as to plaintiff Santiago.  See Vasquez, 572 F.3d at 591 (citation and internal quotation marks omitted). "'[G]iven the nature of fibromyalgia, . . . subjective pain complaints play an important role in the diagnosis and treatment of the condition[.]'"  See Hardt v. Astrue, 2008 WL 349003, at *4 (D.Ariz. Feb. 6, 2008) (quoting Rogers, 486 F.3d at 248).  Thus, "'providing justification for discounting a claimant's statements [of subjective pain] is particularly important[]'" where, as here, a claimant has been diagnosed with fibromyalgia.  See id. (quoting Rogers, 486 F.3d at 248).

In the present case, the ALJ offered three specific "facts" as the basis for discounting plaintiff's pain testimony: (1) lack of "obvious pain behavior[;]" (2) lack of ongoing treatment for pain;

---

[8] The ALJ did not make any specific finding of malingering by plaintiff; perhaps that is because there is no record evidence suggesting that she was doing so.

and (3) her ability to perform certain activities of daily living. Admin. R. at 29 (citation omitted). The court will address each in turn to decide whether individually or collectively they meet the clear and convincing standard for discrediting plaintiff's subjective pain testimony.

### 1. Lack of "Obvious Pain Behavior"

In discrediting plaintiff's pain allegations, the ALJ relied upon Dr. Watkins "indicat[ion] during his evaluation that no obvious pain behavior was noted[.]" Admin. R. at 29 (citing [Admin. R. at 187]). It is possible, as does the plaintiff, to construe this aspect of the ALJ's decision as discrediting her testimony "because it is not substantiated affirmatively by objective medical evidence." See Robbins, 466 F.3d at 883 (citations omitted). That is an impermissible basis for discrediting plaintiff's testimony, however. See id.; see also Shehan v. Astrue, 2009 WL 2524573, at *2 (C.D.Cal. 2009) (citing, inter alia, Lingenfelter, 504 F.3d at 1035-36) ("[O]nce a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence.") That is especially so where, as here, the ALJ "effectively requir[ed] objective evidence for a disease that eludes such measurement[]" – namely, fibromyalgia. See Benecke, 379 F.3d at 594 (citation and internal quotation marks omitted). Indeed, the Ninth Circuit in Benecke held that the ALJ erred by imposing that requirement on a claimant with fibromyalgia, pointedly noting that "[s]heer disbelief is no substitute for substantial evidence." Id.

1   There is another equally compelling reason why the ALJ's cite
2   to Dr. Watkin's isolated comment is not an adequate basis for
3   discrediting plaintiff's credibility.  Dr. Watkins has a Ph.D. in
4   psychology.  PSOF (doc. 17) at 9, ¶ 17:13-14.  He is not a medical
5   doctor.  Consistent with his area of specialization, and as his
6   report and follow-up documentation for the state of Arizona show,
7   Dr. Watkins was evaluating "[p]laintiff's *mental* functioning[,]" as
8   opposed to her physical symptoms.  See PSOF (doc. 17) at 9, ¶ 27
9   (emphasis added); and DSOF (doc. 26) at 8, ¶ 20; and AR at 187-196.
10  Understandably then, Dr. Watkins did not conduct a physical
11  examination of plaintiff.  Thus, Dr. Watkin's passing observation as
12  to plaintiff's lack of "obvious pain behavior" at his one-time
13  evaluation of her "mental functioning" is not a specific, clear and
14  convincing reason for rejecting plaintiff's subjective complaints of
15  pain.

16              ***2.  Pain Treatment***

17      The second reason the ALJ proffered for discounting plaintiff's
18  pain testimony is that she was "not currently involved in any
19  ongoing modality for chronic pain, such as epidural injections,
20  biofeedback, acupuncture, or the use of a TENS [transcutaneous
21  electrical nerve stimulation] unit."  Admin. R. at 29.  In a similar
22  vein, the ALJ mentioned plaintiff's "self-discharge[] from physical
23  therapy after five visits[.]"  Id. (citation omitted).  From the
24  ALJ's perspective, "if [plaintiff] had pain at the level alleged,
25  she would be seeking some method of pain relief."[9]  Id.  The ALJ

26  _____

27          [9]    At this point, the ALJ did not specify the level of pain which
    plaintiff allegedly had.  Evidently the ALJ was referring to his earlier summation
28  of plaintiff's testimony where he noted that plaintiff "stated that she has
    constant pain in her whole body, including pain throughout her spine."  Admin. R.

made this last observation despite his awareness that plaintiff was "taking prescribed pain medications, and "ha[d] undergone some manipulative therapy[.]" Id. Thus, as the court construes the ALJ's decision, he rejected plaintiff's pain testimony because in his view her treatment was conservative[10], consisting primarily of pain medication.

Dr. Doust, with The Pain Center of Arizona, recounts that plaintiff "tried numerous medications to address her fibromyalgia including Vicodin, Percocet, Robaxin, tramadol, Flexeril, Neurontin, numerous non steroidal anti[-]inflammatory drugs and other muscle relaxants with little to no change in her pain symptoms." Id. at 368. Additionally, Dr. Doust prescribed OxyContin. Id. at 369. The record corroborates plaintiff's ongoing management of her pain with medication, as Dr. Doust noted. See, e.g., id.. at 253; 276; 278; 281; 366; and 368-69. The record also shows that to alleviate her pain plaintiff "tried physical therapy and osteopathic manipulation which helped temporarily." Id. at 368; see also id. at 374-375.

Despite the foregoing, when reporting to Dr. Doust, plaintiff uniformly rated her pain level as ten on a scale of one to ten. Id. at 340; 366; 370; and 373. During her visits to Dr. Doust plaintiff further reported that her pain had "been occurring more frequently[,]" with "[t]ypical episodes . . . longer than before."

---

at 25.

[10] "The Ninth Circuit has characterized 'conservative treatment' as, for example, 'treat[ment] with an over-the-counter pain medication[,]' Parra v. Astrue, 481 F.3d 472, 751 (9th Cir. 2007), or a physician's failure 'to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain.'" Huerta v. Astrue, 2009 WL 2241797, at *4 n.2 (C.D.Cal. July 22, 2009) (quoting Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)).

Id. 370 and 373.  Viewing the record as a whole shows that plaintiff was in continuous treatment for her pain for at least two years with her primary treating physician.  See id. at 260-305.  During that time, on several occasions plaintiff also consulted a rheumatologist and a pain specialist about her pain.  Id. at 240-259; and at 339-342; and at 366-375.  Plaintiff's pain symptoms were never completely alleviated however, and, at best, she would have temporary moments with some reprieve from pain.  As Dr. Doust described it, plaintiff reported that her "pain is constant, increasing with activity and improving somewhat with rest and her current medications" which included OxyContin and Percocet.  Id. at 3642 and 369

"Failure to seek relief from pain is probative of credibility because 'a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief.'"  O'Neil, 2009 WL 1444437, at *8 (quoting Orn, 495 F.3d at 638) (other citation omitted).  Hence, when a "claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."  Orn, 495 F.3d at 638 (citation omitted).  Additionally, "a conservative course of treatment can undermine allegations of debilitating pain," but that "fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment."  Carmickle, 533 F.3d at 1162 (citation omitted).

Plaintiff claims that the ALJ improperly discredited her pain testimony because she was not receiving pain treatment with any of

the modalities which the ALJ identified.  The court agrees although

for different reasons than plaintiff advances.[11]

When plaintiff's treatment is assessed in the context of

fibromyalgia, which the ALJ did not do, it is apparent that although

[11]    Plaintiff asserts that the ALJ's finding as to her lack of current pain treatment "is not supported in law or fact."  Mot. (doc. 18) at 12:4.  Somewhat ironically, the same could be said of plaintiff's arguments on that point.  The parts of the administrative record to which plaintiff cites do not support the broad assertions in her motion.

To illustrate, plaintiff explicitly states that on the hearing date, April 10, 2006, she was "*in active treatment* with the Pain Center of AZ and was receiving narcotic pain medications of Oxycontin and Percocet[.]" Id. at 12:9-11 (citing AR at 366) (emphasis added).  The cited page and, indeed, the other Pain Center records, belie this assertion.  Page 366 relates solely to plaintiff's December 5, 2005, visit to the Pain Center - a visit which preceded the hearing date by four months.  See Admin. R. at 366.  Thus, despite plaintiff's urging, it cannot be said, based upon page 366 of the record, that at the time of the hearing, April 10, 2006, she was in "active treatment" at the Pain Center of Arizona.  In terms of a time frame, based upon the Pain Center documentation in the record, the most that can be said is that the last of plaintiff's four office visits was February 3, 2006 - two months prior to her hearing.  See id. at 373-375.  Plaintiff mischaracterizes the record in other ways, but the foregoing sufficiently  makes the point.

Besides factual mischaracterizations, plaintiff's reliance upon Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996), is misplaced.  Citing to Sarchet, plaintiff claims that because "[t]he modalities referenced by the ALJ (e.g., epidural injections) are not widely prescribed for Fibromyalgia[,] . . . , the absence of such treatment is not relevant[.]" Mot. (doc. 18) at 12:12-14.  There is no mention in Sarchet, however, of any of "the modalities" referenced by the ALJ, let alone support for the view that such modalities "are not widely prescribed for Fibromyalgia[.]" See id.  The foregoing demonstrates the lack of relevant legal support for plaintiff's position.

Additionally, plaintiff improperly attempts to offer *post hoc* rationalization for the treatment she underwent, by questioning the efficacy of a TENS unit for treating fibromyalgia - one of the ALJ's suggested treatment modalities.  To support this argument, plaintiff cites to a Mayo Clinic website.  Reply (doc. 35) at 11-12 (citing http://www.mayoclinic.com/health/tens/AN01946).  She also cites to that website to show that "medication," which plaintiff did receive, "is the most widely used treatment for Fibromyalgia." Id. at 11 (citing http://www.mayoclinic.com/health/Fibromyalgia/DS00079/DSECTION=treatments-and-drugs).  In accordance with the Commissioner's Rule 96-7p, the foregoing may be "other information . . . , that may explain" plaintiff's "failure to seek medical treatment[]" of the type which the ALJ mentioned.  See SSR 96-7p, 1996 WL 374186, at *7.  Significantly, the court cannot resort to that "other information" from the Mayo Clinic website, however, because it is not "in the case record[.]" See id. These websites, upon which plaintiff relies for the first time in her Reply, are an impermissible expansion of the record which the court may not consider.  See Liaga v. Astrue, 2009 WL 2355762, at *1 (C.D.Cal. July 20, 2009) (citing, *inter alia*, 42 U.S.C. § 405(g)) ("[T]he court lacks jurisdiction to reverse the Commissioner's decision based on evidence that is not part of the administrative record."); see also Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997) ("Section 405(g) generally precludes consideration on review of evidence outside the record before the Commissioner during the administrative proceedings.")

she was not undergoing any of the treatments listed by the ALJ, that is not a valid reason for discounting her pain allegations. As noted earlier, as the court reads the ALJ's decision, he rejected plaintiff's subject pain complaint in part because she followed a conservative treatment approach for her fibromyalgia. That it is not a clear and convincing reason for discrediting plaintiff's pain allegations.

In <u>Cota</u>, as here, "[t]he ALJ characterized Plaintiff's treatment as conservative, consisting of only medications, and as inconsistent with the type of treatment one would expect for a totally disabled individual." <u>Cota</u>, 2009 WL 900315, at *8. Explaining that "the adequacy of the ALJ's reasoning must be assessed in the context of . . . fibromyalgia[,]" the court soundly reasoned that "given the nature of fibromyalgia and the absence of any cure for the disease, it is difficult to imagine what treatment, if any, that is less conservative and that Plaintiff neglected to seek or undertake." <u>Id.</u> at *9. The court thus found that the "ALJ's reasoning in th[at] regard was not clear and convincing." <u>Id.</u>

The ALJ in <u>Olguin v. Astrue</u>, 2009 WL 4641728 (C.D.Cal. Dec. 2, 2009), similarly "question[ed] Plaintiff's credibility because she never received more than conservative treatment and no treating or examining source recommended surgery." <u>Id.</u> at *11. The court found those to be "legally inadequate reasons to find Plaintiff not credible[]" with respect to her fibromyalgia induced pain. <u>Id.</u> As did the <u>Cota</u> court, in <u>Olguin</u> the court emphasized the lack of a "cure or known surgical treatment[]" for fibromyalgia. <u>Id.</u> The court also found persuasive the fact that "[t]reating sources . . .

made clear that conservative treatment had not been effective." <u>Id.</u>
(citation omitted). Succinctly put, the court found that it was
"not Plaintiff's fault [that] there is no accepted, aggressive
treatment protocol that could be expected to relieve her pain." <u>Id.</u>
Adopting the reasoning of the <u>Cota</u> and <u>Olguin</u> courts, this court,
too, finds that on the record as presently constituted plaintiff's
"conservative" treatment approach, primarily in the form of pain
medications, is not a sufficient reason to reject her pain
allegations.

There is another flaw in the ALJ's assessment of plaintiff's
credibility *vis-a-vis* her medical treatments. Aside from
injections, the court is not aware of any record evidence, nor did
the ALJ cite to any, showing that the other treatments which he
listed, *i.e.*, biofeedback, acupuncture or a TENS unit, were ever
suggested, must less prescribed, for plaintiff. In that respect,
the present case is similar to <u>Werle</u>. There, the court persuasively
explained that "[t]o the extent that the ALJ discounted Plaintiff's
credibility because a TENS unit was not prescribed, there is no
medical evidence in the record suggesting that such treatment would
alleviate Plaintiff's symptoms and/or was appropriate treatment in
Plaintiff's case." <u>Werle</u>, 633 F.Supp.2d at 888-89. Thus, the <u>Werle</u>
court held that it was "improper for the ALJ to discount Plaintiff's
credibility because [her] treating physicians did not provide some
other treatment." <u>Id.</u> at 889.

For the most part, the same is true here. Apart from
injections, there is no record evidence suggesting that the other
treatment modalities the ALJ suggested would alleviate plaintiff's
pain or was otherwise appropriate treatment for her. This reasoning

becomes even more compelling under the particular facts of this case because, as explained above, to date fibromyalgia has alluded the medical community both in terms of a cause and a cure.  See Benecke, 379 F.3d at 590.

Turning briefly to injections as a treatment method, at her first two appointments with Dr. Doust he did "discuss[]" with plaintiff "alternative treatments including . . . trigger point injection-based therapy.[12]"  Admin. R. at 342 and 369 (footnote added).  Dr. Doust noted that plaintiff will "think about" that "option[]," among others.  Id. at 342 and 369.  Medical records from plaintiff's two subsequent Pain Center visits do not again mention the possibility of any kind of injection therapy, however.  Perhaps that is because on a follow-up Pain Center visit Dr. Doust "noted report of moderate stability of [plaintiff's] pain symptomatology[]" on her "current[] . . . analgesic regimen for . . . pain[.]" Id. at 372.  The fact that plaintiff was contemplating other treatment options does not undermine her credibility, particularly where her treating pain specialist did not again broach the subject of any kind of injection therapy.  On this record, the court is left to conclude that the ALJ did not meet the demanding specific clear and convincing standard when he discredited plaintiff's pain allegations because she did not employ certain treatment modalities such as biofeedback and acupuncture.

Plaintiff also takes issue with the ALJ's finding that she "self-discharged from physical therapy after five visits" as a basis

---

[12]     For the sake of argument, the court is equating epidural and trigger point injections, even though there may well be a medically significant distinction.

for discrediting her pain testimony.  <u>See</u> Admin. R. at 29 (citing

[Admin. R. at 343]).  Plaintiff contends that that "self-discharge"

was "medical[ly] justifi[ed][,]" and thus does not support the ALJ's

adverse credibility finding.  Reply (doc. 35) at 12:4-5 (citations

omitted).  More specifically, plaintiff explains that she was "five

months pregnant[]" at the time, and "was concerned that physical

therapy would be harmful to her baby."  Mot. (doc. 18) at 12:25-26.

Plaintiff also supposedly "reported this to the physical therapist

and followed up with her primary care physician, who prescribed

narcotic pain medications[.]"  <u>Id.</u> at 12:27-13:1 (citing Admin. R. at

344).

     Although somewhat persuasive on its face, close examination of

the record shows the weaknesses in plaintiff's position.  First, the

"discharge summary" to which the ALJ cites does not give any

indication as to why, when she was contacted on April 20, 2004,

plaintiff advised that she was "not returning" to physical therapy,

much less mention her pregnancy and her supposed concerns about harm

to the baby.  <u>See</u> Admin. R. at 343.  Therefore if, as plaintiff

contends, she did not return to physical therapy because she was

pregnant, the ALJ would have no way of ascertaining that fact from

the particular discharge summary.  Indeed, none of plaintiff's

physical therapy records from NovaCare Rehabilitation offer any

explanation as to why she did not return for more physical therapy.

<u>See</u> <u>id.</u> at 344-365.  Second, although the parts of the record to

which plaintiff cites confirm that she was roughly five months

pregnant in April 2004, when she "self-discharged" from physical

therapy, <u>see</u> <u>id.</u> at 343, the cited records do not explain the reason

for her discharge.  <u>See</u> <u>id.</u> at 151-153.  Perhaps that is because

those records are from an unrelated July 2004 emergency room hospitalization. Id. at 151. Thus, in contrast to plaintiff's approach to treatment, her self-discharge from physical therapy after five visits is a specific, clear and convincing reason for discrediting her pain allegations.

### 3. Activities of Daily Living

"'The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits and many home activities are not easily transferrable to what may be the more grueling environment of the workplace.'" O'Neil, 2009 WL 1444437, at * 5 (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). Accordingly, the Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). Put differently, "an ALJ may not reject a claimant's testimony simply because she engages in minimal daily activities despite her impairments." Jimenez, 2009 WL 2589780, at *4 (citations omitted). That is so because, as the Ninth Circuit has so picturesquely stated, "'[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.'" Bui v. Astrue, 2009 WL 2629491, at *5 (D.Or. Aug. 25, 2009) (quoting Cooper v. Bowen, 815 F.2d 556, 561 (9th Cir. 1987)) (other citation omitted).

Rather, "[i]t is only where the level of activity is inconsistent with a claimed limitation that the activity has any bearing on credibility." Id. (citing Reddick, 157 F.3d at 722).

Daily activities, therefore "may be grounds for an adverse
credibility finding if a claimant is able to spend a substantial
part of h[er] day engaged in pursuits involving the performance of
physical functions that are transferable to a work setting." Orn,
495 F.3d at 639 (citations and internal quotation marks omitted)
(emphasis omitted by Orn Court). "[T]o conclude that a claimant's
daily activities warrant an adverse credibility determination[,]"
however, "[t]he ALJ *must make specific findings* relating to [the
daily] activities *and* their transferability[.]" Id. (citation and
internal quotation marks omitted) (emphasis added).

The ALJ did neither here. Plaintiff's "ability to take care of
her small children *suggest[ed]*" to the ALJ that she "is not as
disabled by her pain as she . . . allege[s][.]" Admin. R. at 29
(emphasis added). The ALJ did not elaborate at all. Instead, he
merely noted that plaintiff "reported to Dr. Watkins that she takes
care of her children and does light housework[.]" Id. (citing [AR at
189]). Plainly, the ALJ's findings regarding plaintiff's daily
activities were minimal and his transferability analysis non-
existent. Thus, the court agrees with plaintiff that the foregoing
is not sufficient justification for the ALJ's adverse credibility
finding.

In discrediting plaintiff's pain allegations based upon her
ability to care for her small children, the ALJ mischaracterized the
record. To support that view, the ALJ cited to page three of Dr.
Watkins' evaluation. Admin. R. at 29 (citing [Admin. R. at 189]).
Dr. Watkins did note that plaintiff "does the childcare[,]" but the
ALJ disregarded the doctor's further notation that plaintiff's
"boyfriend and her older children help[] with the housework." Id.

- 42 -

at 189-90.  That additional notation is consistent with plaintiff's
description of her daily activities in her "Function Report[,]"
which the ALJ also disregarded.  In that Report, when asked *inter
alia*, whether she has "help" in caring for "other people[,]"
plaintiff wrote that "[s]ometimes [her] my older kids help out with
housework (chores) and they also help w[ith] younger siblings
[sic]" in terms of homework and babysitting.  Id. at 108.
Plaintiff's hearing testimony corroborates this Report in that she
testified that her son, who was 19 years old at the time and was not
in school, "help[ed] [her] at home[,]" such as with meal
preparation.  Id. at 417; at 111.  Thus, the ALJ's apparent
assumption that plaintiff takes care of her children and does light
housework with no assistance, is not based upon substantial evidence
in the record.  Indeed, as just shown, the record evidence is to the
contrary.

Even if the record did support the ALJ's perception that
plaintiff cared for her children and did light housework on her own,
that would not be "inherently inconsistent with her complaints of
pain."  See Jimenez, 2009 WL 2589780, at *4 (citation omitted).  The
Ninth Circuit has repeatedly recognized that "an ALJ may not reject
a claimant's testimony simply because she engages in minimal daily
activities despite her impairments."  Id. (citations omitted).
Thus, as in Jimenez, "[p]laintiff's ability to perform some
household chores" and care for her children with assistance is not a
sufficient basis for rejecting her allegations of pain.  See id.

Further, rather than "consider[ing] the totality of the
evidence bearing on [plaintiff's] ability to perform" housework and
care for her children, as the ALJ was required to do, see O'Neil,

- 43 -

2009 WL 1444437, at *6 (citing <u>Redick</u>, 157 F.3d at 722), the ALJ
selectively read from the record and relied upon one isolated
partial comment from the State's examining psychologist who saw the
plaintiff once. The ALJ did not take into account, for example,
record evidence as to "how pain affected [plaintiff's] abilities to"
care for her children and do housework. <u>See</u> <u>id.</u> The ALJ
conveniently overlooked plaintiff's "Function Report" explaining
that her ability to care for her children and to do housework
depends upon her level of pain. If plaintiff "feels up to[] it[,]"
she "do[es] [her] housework[.]" Admin. R. at 107. Otherwise, she
"wait[s] for help" from the "oldest children" when they return from
school. <u>Id.</u>

Reviewing the record as a whole demonstrates that plaintiff's
daily activities were relatively limited and carried out with a fair
amount of difficulty due to pain. Thus, the totality of the
evidence as to plaintiff's activity level, does "not seem to be
enough to conclude that [she] could work a full time job," or that
her pain allegations are false. <u>See</u> <u>Valdez v. Astrue</u>, 2008 WL
4814913, at *4 (C.D.Cal. Oct. 30, 2008); <u>see</u> <u>also</u> <u>Jimenez</u>, 2009 WL
2589780, at *4 ("Plaintiff's ability to perform some household
chores was not sufficient to support . . . rejecti[ng] . . .
Plaintiff's pain testimony.")

Not only that, but the ALJ did not, as he must, "evaluate the
claimant's ability to work on a *sustained basis*." <u>See</u> <u>Cota</u>, 2009 WL
900315, at *8 n.5 (citations and internal quotation marks omitted)
(emphasis added). "The process involves an assessment of physical
abilities and then of the nature and extent of physical limitations
with respect to the ability to engage in work activity on a regular

- 44 -

and continuing basis." Id. (citing 20 C.F.R. § 404.154(b)). "A regular and continuing basis means eight hours a day, five days a week, or an equivalent work schedule." Id. (citing S.S.R. 96-8p at 1, 2). The ALJ did mention that plaintiff "naps for one to two hours twice a day[.]" Admin. R. at 25. Significantly, though, the ALJ did not consider how plaintiff's fatigue would impact her ability to perform in "the more grueling environment of the workplace." See Fair, 885 F.2d at 603. It is difficult, if not impossible to conceive of how napping for between one and two hours a day, twice daily, is compatible with working on a "sustained basis." See Cota, 2009 WL 900315, at *8 n.5 (citing, inter alia, 20 C.F.R. § 404.1512(a)) (other citations and internal quotation marks omitted).

Perhaps the most critical defect, however, is the ALJ's failure to consider whether plaintiff's daily activities "meet the threshold for transferable work skills[.]" See Orn, 495 F.3d at 693 (citation omitted). Conspicuously absent from the ALJ's decision is any mention as to how plaintiff's limited daily activities, such as childcare and light housework, are transferrable to a work setting. Admittedly the record shows that plaintiff could do more than plaintiff Orn, who could only read, watch television and color in coloring books. But here, as in Orn, the ALJ did not make "specific findings relating to [the daily] activities and their transferability[.]" See Orn, 495 F.3d at 639 (citation and internal quotation marks omitted). The ALJ did not explain how plaintiff's relatively limited daily activities "established that [she] could work." See Hamblin v. Astrue, 2009 WL 113858, at *5 (C.D.Cal. Jan. 14, 2009). This court may not "guess[;] [t]he ALJ must explain with

- 45 -

particularity which activity he is referring to *and how* it is
inconsistent with Plaintiff's claims of severe pain." See id.
(emphasis added).  Without that explanation, the court has no choice
but to reject the ALJ's reliance upon plaintiff's daily activities
as a basis for negating her pain testimony.  The ALJ's decision to
discredit plaintiff based upon her limited daily activities was not
sufficiently specific nor sufficiently clear and convincing.

    In sum, three of the reasons for the ALJ's adverse
credibility finding do not satisfy the demanding specific, clear and
convincing standard.  One of the ALJ's articulated reasons does
satisfy that standard though – plaintiff's self-discharge from
physical therapy.  The court's focus thus necessarily shifts to
whether the ALJ's negative credibility finding can stand based upon
that single legally sufficient reason.  Put differently, was it
harmless error for the ALJ to rely upon three legally improper
reasons to support his adverse credibility finding.  See Carmickle
v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)
(engaging in harmless error analysis where "two of the ALJ's [four]
reasons supporting his adverse credibility finding [were] invalid").

    An ALJ's err is harmless "[s]o long as there remains
substantial evidence supporting the ALJ's conclusions on credibility
and the error does not negate the validity of the ALJ's ultimate
[credibility] conclusion[.]" Id. (citations and internal quotation
marks omitted).  "[T]he relevant inquiry . . . is not whether the
AlJ would have made a different decision absent any error," but
"whether the ALJ's decision remains legally valid, despite such
error."  Id.  The ALJ's adverse credibility finding here does not
satisfy that standard.  The only valid reason supporting that

finding is plaintiff's self-discharge from physical therapy after
five appointments. That reason alone does not rise to the level of
substantial evidence to support the ALJ's finding that plaintiff's
allegations "with regard to the severity and extent of her pain[]
are not entirely credible." See Admin. R. at 29. Thus at the end
of the day, the court is left to conclude that the ALJ did not
provide the requisite specific, clear and convincing reasons for
rejecting plaintiff's pain allegations.

## VI. Remand

At this juncture, the court has found two fundamental errors in
the ALJ's decision. The first is his failure to properly weigh and
evaluate the medical opinion evidence. The most glaring deficiency
is the ALJ's failure to provide specific and legitimate reasons
supported by substantial evidence in the record for rejecting the
opinions of plaintiff's primary treating physician, Dr.
Christianson. The second error is that the ALJ's reasons for
discrediting plaintiff's pain allegations were not specific, clear
and convincing.

In light of these errors, the issue becomes the scope and
nature of the remand here. In turn, that remand issue implicates
what the Ninth Circuit refers to as the "credit-as-true" rule. That
rule, compels the Commissioner to "accept, as a matter of law, a
claimant's subjective pain testimony if the ALJ fails to articulate
sufficient reasons for refusing to credit it." Vasquez, 572 F.3d at
593 (citation omitted). The credit-as-true rule has the same effect
when an ALJ fails to properly evaluate medical opinion evidence.
See Lester, 81 F.3d at 834 (citations and internal quotation marks
omitted) (emphasis added) ("Where the Commissioner fails to provide

adequate reasons for rejecting the opinion of a treating or

examining physician, we *credit* that opinion *as a matter of law*.")

In the present case, plaintiff contends that the court should

apply the credit-as-true rule to both her subjective pain

allegations and to the opinions of her primary treating physician.

When that is done, plaintiff Santiago asserts that remand for an

immediate award of benefits is warranted.  Wholly disregarding the

credit-as-true rule, the Commissioner is taking the position that if

the court finds that the ALJ erred in any respect, remand for

further proceedings – not for payment of benefits – is the proper

remedy.

Generally, the Ninth Circuit "credit[s] evidence and remand[s]

for an award of benefits where (1) the ALJ has failed to provide

legally sufficient reasons for rejecting such evidence, (2) there

are no outstanding issues that must be resolved before a

determination of disability can be made, and (3) it is clear from

the record that the ALJ would be required to find the claimant

disabled were such evidence credited."  Smolen, 80 F.3d at 1292.

Despite the strong suggestion in Lester and other cases that that

application of the credit-as-true rule is mandatory, in Connett v.

Barnhart, 340 F.3d 871 (9th Cir. 2003), the Court concluded that

"[i]nstead of being a mandatory rule, [a court] ha[s] some

flexibility in applying the 'credit as true' theory[.]" Id. at 876.

Adopting that flexible approach, in Connett the Ninth Circuit held

that remand for further proceeding was appropriate because there

were "insufficient findings as to whether [the claimant's] testimony

should be credited as true." Id. "These and other Ninth Circuit

decisions have created what the dissent in Vasquez described as a

"morass" in this Circuit's "crediting-as-true jurisprudence."
Crismore v. Astrue, 2009 WL 3712593, at *7 (quoting Vasquez, 572
F.3d [at 605]).

The Vasquez Court avoided resolving the "split in authority"
which has "developed [in this Circuit] over whether the [credit-as-
true] rule is mandatory or discretionary." Vasquez, 572 F.3d at 593
(citing cases). The Vasquez Court was able to sidestep that issue
because there were "outstanding issues that [had to] be resolved
before a proper disability determination c[ould] be made." Id. at
593 (footnote and citations omitted). Nonetheless, on remand the
Court "instructed" the ALJ to "credit[] Vasquez's symptom pain
testimony and tak[e] into account the evidence of her mental
impairment[.]" Id. at 598. After that, the Ninth Circuit further
instructed the ALJ to "make a determination as to Vasquez's residual
functioning capacity and [her] entitl[ement] to benefits in the
first instance." Id.

The court has scrutinized the entire record in this case; read
and reread the ALJ's opinion; and carefully considered the parties'
arguments, even when they missed the mark due to lack of legal
support or mischaracterization of the record. The court is also
mindful of the credit-as-true rule. After careful consideration,
the court finds that it is necessary to remand this matter for
further proceedings. On remand, however, the ALJ will not be
required to credit-as-true plaintiff's pain allegations or the
opinions of her primary treating physician.

Several reasons compel this result. In the first place, it is
not "clear from the record that the ALJ would be required to find
[plaintiff] disabled were such evidence credited." See Smolen, 80

- 49 -

F.3d at 1292 (citation omitted).  Moreover, insofar as the medical
evidence is concerned, "[t]he ALJ is in a better position than this
Court to evaluate" that evidence in the first instance.  See
Crismore, 2009 WL 3712593, at *7.  "As the Ninth Circuit explained
when reaching a similar assessment in McAllister, "[t]here may be
evidence in the record to which the [Commissioner] can point to
provide the requisite specific and legitimate [or clear and
convincing] reasons for disregarding the testimony of [the
claimant's] treating physician.  Then again, there may not be.  In
any event, the [Commissioner] is in a better position than this
court to perform this task."  Id. (quoting  McAllister v. Sullivan,
888 F.2d 599, 603 (9th Cir. 1989)) and citing Anderson v. Barnhart,
2004 WL 725373, *10 (N.D.Cal.2004) (remanding for reconsideration
where "the ALJ failed to adequately explain his reasons for
rejecting [treating physician's] conclusions as to work restrictions
and [Claimant's] testimony with respect to the extent and effect of
his pain....");  Perry v. Astrue, 2009 WL 435123 (S.D.Cal.2009)
(remanding for further proceedings where the ALJ failed to cite
sufficient reasons for rejecting the treating physician's opinion)).

    Similarly, on remand the ALJ must adequately explain his
"treatment of" the opinions of Drs. Christianson and Cunningham, and
"where the record is unclear, [or incomplete] gather additional
information."  See Belmont, 2009 WL 2591347, at *20; see also
Benecke, 379 F.3d at 593 ("Remand for further administrative
proceedings is appropriate if enhancement of the record would be
useful.") "Remand is [also] appropriate to allow the ALJ the
opportunity to discuss the medical evidence regarding Plaintiff's
fibromyalgia in accordance with the proper legal standards."  See

Ostalaza, 2009 WL 3170089, at *6.

In addition, as thoroughly discussed above, only one of the ALJ's stated reasons for discrediting plaintiff's pain allegations is legally sufficient. However, from the court's review of the record it is "unable to ascertain whether the ALJ would still find Plaintiff not credible without relying on the improper reasons addressed" herein. See Green v. Astrue, 2009 WL 310284, at *6 (D.Ariz. Feb. 6, 2009).

In conclusion, the court finds that the ALJ did not properly weigh and evaluate. And because it is unclear as to whether an award of benefits should result after the ALJ properly considers the evidence and develops the record as necessary, the court will remand this matter for further administrative proceedings and a new hearing decision. Because the court is unable to make a disability determination without further proceedings, it will not decide "whether the remaining issues raised by Plaintiff would independently require reversal." See Shehan, 2009 WL 2524573, at *4 n. 2 (citing Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003) (where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate).) "The court recommends, however, that all of Plaintiff's arguments be considered when determining the merits of her case on remand[,]" especially her contention that the ALJ "fail[ed] to include [her] significant mental limitations" in his RFC Assessment. See Reply (doc. 33) at 15 (emphasis omitted).

For the reasons set forth herein, the court hereby ORDERS that:

(1) the motion for summary judgment by plaintiff Jennifer L. Santiago (16) is GRANTED with respect to error in the ALJ's disability determination, but DENIED to the extent that she seeks a remand for an award of benefits;

(2) the cross-motion for summary judgment by defendant Michael J. Astrue, Commissioner of Social Security (doc. 24) is DENIED;

(3) the defendant Commissioner's decision denying benefits is VACATED; and

(4) this matter is remanded pursuant to 42 U.S.C. § 405(g) to the defendant Commissioner for further proceedings consistent with this Order.

DATED this 9th day of February, 2010.

Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record